# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | | **3:17-CR-128** |
| | : | |
| **v.** | | |
| | : | **(JUDGE MANNION)** |
| **SHAVONNE SAXON,** | : | |
| **Defendant** | : | |

## MEMORANDUM

## I.   BACKGROUND

On June 17, 2020, defendant Shavonne Saxon filed, *pro se*, an Emergency Motion for Compassionate Release under 18 U.S.C. §3582(c)(1)(A). Saxon requests the court to immediately release her from prison at FCI Danbury, the women's prison, ("FSL"), in Fairfield County, Connecticut, to home confinement in Wilkes-Barre, Luzerne County, Pennsylvania, with her father and step mother.[1] Saxon's motion is based on

---

[1] "FCI Danbury consists of three facilities—the low-security men's prison [ ], which houses about 719 inmates; a minimum-security women's camp which houses about 134 inmates; and a low-security women's satellite prison, [where Saxon states she is housed] which houses about 131 inmates." United States v. Pawlowski, 2020 WL 2526523, *3 n. 5 (E.D. Pa. May 18, 2020), affd. ---F.3d.---, 2020 WL 4281503 (3d Cir. June 26, 2020), (citing Martinez-Brooks v. Easter, No. 20-569, 2020 WL 2405350, at *4-5 (D. Conn. May 12, 2020).

In Pawlowski, the Third Circuit affirmed the district court's decision denying on the merits defendant's motion for compassionate release under 18 U.S.C. §3582(c)(1), after finding that COVID-19 and defendant's medical

the COVID-19 pandemic and her underlying health issues, including obesity, and a heart murmur, which she alleges put her at a higher risk for serious complications if she contracts the COVID-19 virus. (Doc. 130). Saxon also alleges that her medications for chronic migraines and back pain make her more susceptible to serious complications if she contracts the virus. Saxon alleges that there are many positive cases of COVID-19 in Fairfield County and in the prison, (FSL), where she is confined, where "at least 30% of the inmate population has tested positive", and that "FCI Danbury is … experiencing an active outbreak of COVID-19 at significant levels."

In fact, "a class action seeking habeas relief for inmates at FCI Danbury, and challenging the prison's response to the COVID-19 outbreak on various grounds, is ongoing in the District of Connecticut." *See* Pawlowski, ---F.3d---, 2020 WL 4281503, *3 n. 8 (citing Martinez-Brooks v. Easter, No. 20-cv-569, —— F. Supp. 3d ——, ——, 2020 WL 2405350, at *32 (D. Conn.

---

conditions constitute "extraordinary and compelling reasons" but the factors in 18 U.S.C. §3553(a), particularly the amount of time remaining to be served in the defendant's sentence, (noting that if relief was granted, it would reduce defendant's 15-year sentence to less than two years' imprisonment), did not weigh in favor of granting the motion. The Third Circuit in Pawlowski also held that the abuse-of-discretion standard of review applies to a district court's determination of whether the §3553(a) factors weigh in favor of granting a defendant compassionate release. *See* Pawlowski, ---F.3d---, 2020 WL 4281503, *2.

The court notes that the Third Circuit in Pawlowski did not address the exhaustion issue with respect to a motion for compassionate release under 18 U.S.C. §3582(c)(1).

May 12, 2020) (granting in part the inmates' motion for a temporary restraining order)).[2]

Further, Saxon alleges that the prison is not providing inmates with a safe environment, and that social distancing is impossible with the open dormitory setting and common areas shared by over 150 inmates. She states that sanitation and safety guidelines are not being followed in the prison, and that other safety protocols recommended by the CDC are being ignored.[3]

---

[2]"[The] temporary restraining order issued in the habeas class action on May 12 [2020] requires the Warden [at FCI Danbury] to '[f]inalize and implement a process that makes full and speedy use of the home confinement authority under 18 U.S.C. §3624(b) and the CARES Act' based on criteria which require the Warden to 'assign[ ] substantial weight [in the review process] to the inmate's risk factors for COVID-19 based on CDC guidance' and to 'eliminat[e] all requirements that the inmate have served some portion of his or her sentence to be eligible for placement on home confinement.'" Pawlowski, 2020 WL 2526523, *4 n. 6 (citing Martinez-Brooks, 2020 WL 2405350, at *33).

[3]The number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal BOP, https://www.bop.gov/coronavirus/. According to the government, "at FCI Danbury in Danbury, Connecticut", "as of July 9, 2020], that institution reports 94 inmates who tested positive for COVID-19, all of whom have recovered, and one inmate who died from COVID-19 complications." It also states that "[n]early the entire prison population of over 800 inmates has been tested for COVID-19", and that "61 staff members have recovered after testing positive for COVID-19." Further, the government has shown by its Exhibits that "Saxon … was tested for COVID-19 at least once in May 2020, the results of which were negative."

In addition, the BOP's website indicates that as of July 27, 2020, the entire complex at FCI Danbury currently has no positive cases of COVID-19 among inmates and one positive case among staff.
.

Additionally, Saxon alleges she has had contact with multiple inmates who later tested positive for COVID-19, but she does not claim to have contracted the virus or to have suffered any symptoms of COVID-19.

Saxon alleges that she is not a threat to the community, that she has served more than 50% of her 72-months' prison sentence and has remained free of disciplinary infractions, and that she is eligible for home confinement in less than 18 months. Specifically, she states that her home confinement eligibility date is November 24, 2021, and that her projected release date is May 24, 2022.

As such, Saxon states the "extraordinary and compelling circumstances" she has alleged warrant a reduction of her prison sentence and her immediate release by the court to home confinement.

Saxon states that she has exhausted her BOP administrative remedies since the warden denied her request for release to home confinement under the CARES Act and, that the warden denied her request for compassionate release based on the COVID-19 pandemic. Saxon attached Exhibits with her motion, namely, Ex. A, Warden Easter's May 6, 2020 response denying her April 28, 2020 request for Compassionate Release/Reduction in Sentence, pursuant to BOP Program Statement 5050.50 and 18 U.S.C. §3582(c)(1)(A), based on COVID-19, and Ex. B, a copy of Saxon's May 14, 2020 request for reconsideration (appeal) of the Warden's denial of her compassionate release "due extraordinary and compelling circumstances under 18 U.S.C. §3582(c)(1)(A)" based on the COVID-19 pandemic. She also submitted as

4

Ex. C excerpts of the number of reported COVID-19 cases in prisons by the BOP.

Specifically, in the response, the Warden stated that Saxon's request was evaluated under the BOP's criteria to see if it met the applicable "extraordinary and compelling" reasons, and that based on a review of her request, "her concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from [her] sentence." The Warden also stated that "[b]ased on current guidelines [Saxon] [is] ineligible for release to home confinement under the CARES Act." (Doc. 130 at 5). Warden Easter also advised Saxon that if she was "not satisfied with this response to [her] request, [she] may commence an appeal of this decision via the Administrative Remedy process by submitting [her] concerns on the appropriate form [BOP form BP-9] within 20 days of the receipt of this response."

As stated, Saxon did in fact appeal the Warden's decision on May 14, 2020. (Id. at 6).

Also, on June 17, 2020, Saxon filed a letter to the court largely repeating her allegations made in her motion and requesting her immediate release from prison to home confinement. (Doc. 131).[4]

---

[4]Saxon's step mother also sent an email to the court in support of Saxon's request for release from prison to home confinement with her and Saxon's father.

On June 17, 2020, the court directed the government to respond to Saxon's motion and to include in its response defendant's medical conditions and the measures which the prison has taken to comply with the Center for Disease Control (CDC) guidelines regarding the COVID-19 pandemic. The court also directed the government to address whether the defendant exhausted her BOP administrative remedies with respect to the relief sought in her motion. (Doc. 132).

On July 9, 2020, the government filed its brief in opposition to Saxon's motion. (Doc. 135). The government also attached a copy of Saxon's April 26, 2020 request for Compassionate Release to Warden Easter, under 18 U.S.C. §3582(c)(1)(A), "due to extraordinary and compelling circumstances." The government also submitted Saxon's April 28, 2020 "emergency" request for Compassionate Release to home confinement, under 18 U.S.C. §3582(c)(1)(A) and the CARES Act, "due to extraordinary and compelling circumstances" based on COVID-19 pandemic. (Doc. 135-1).

Additionally, the government filed Warden Easter's May 6, 2020 response to Saxon's second request for compassionate release, which is identical to the copy of the response Saxon submitted. (Doc. 135-2). Also, as stated, Saxon appealed the Warden's response. The government also filed, under Seal, copies of Saxon's BOP medical records. (Doc. 137).

On July 27, 2020, Saxon filed her reply brief, (Doc. 139), with an attached Exhibit, namely, a copy of the inmates' motion for sanctions and brief filed in the above mentioned class action pending against FCI Danbury

and Warden Easter in the District of Connecticut. *See* Martinez-Brooks v. Easter, No. 20-cv-569, —— F. Supp. 3d ——, 2020 WL 2405350. In her reply brief, Saxon states that when she "requested compassionate release and consideration for release to home confinement under the CARES Act on April 26, 2020 and April 28, 2020, [she] was unaware of the risk factors that put inmates at a higher risk for serious complications." Saxon alleges that when she became aware that she was at a higher risk for serious illness if she contracts COVID-19, she filed her instant motion with the court, rather than submitting a new request to the Warden based on her medical conditions. Saxon also argues that her motion should be granted on its merits, largely repeating her allegations made in her motion.

Despite her pending appeal of the Warden's response to her second request, and despite her failure to submit a new request for compassionate release to the Warden based on her medical conditions and the COVID-19 virus,  Saxon contends that since she submitted her request to the Warden and 30 days have passed since the Warden received her request, she has exhausted his administrative remedies and she can file her motion directly with the court under 18 U.S.C. §3582(c)(1)(A). The government concurs with Saxon stating that the court has jurisdiction over her motion and states that "[h]ere, 30 days elapsed between Saxon's request for release to the warden of FCI Danbury, and her instant motion in this Court", and notes that "[t]he Department of Justice takes the position that an inmate is not required to fully exhaust administrative remedies, and may seek relief from the district court

7

provided 30 days have elapsed from the warden's receipt of a request for compassionate release, regardless of whether the request was denied or appealed." (Doc. 135 at 11 & n. 3).

After considering Saxon's motion, it will be dismissed without prejudice for lack of jurisdiction due to her failure to exhaust all of her BOP administrative remedies under §3582(c)(1)(A)(i). To the extent Saxon is also deemed as seeking the court to order the BOP to find her eligible for immediate home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, the court does not have authority to grant her request for relief and order the BOP to release her to home confinement.[5]

## II.   DISCUSSION

On February 9, 2019, Saxon pleaded guilty to one count of possessing with the intent to distribute cocaine base, in violation of 21 U.S.C. §841(a)(1), and one count of possessing a firearm in furtherance of her drug trafficking, in violation of 18 U.S.C. §924(c).  (Doc. 97).

On November 25, 2019, Saxon was sentenced to 72 months in prison to be followed by three years of supervised release. Saxon did not file a

---

[5]Since Saxon is proceeding *pro se*, the court liberally construes her motion as also seeking home confinement pursuant to the CARES Act, in addition to a motion compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A), based on her above stated allegations.

direct appeal of her judgment of sentence. Saxon filed a collateral appeal by filing a motion, pursuant to 28 U.S.C. §2255, in which she challenges her firearm conviction and alleges ineffective assistance of her trial counsel. (Doc. 125).

The court will first consider the exhaustion issue since it is a threshold matter. *See* United States v. Gadsden, 2020 WL 3871083, *1 (W.D.Pa. July 9, 2020) ("In United States v. Raia, 954 F.3d 594 (3d Cir. 2020), the court of appeals held that district courts cannot consider requests for compassionate release under the First Step Act until a prisoner has exhausted his administrative remedies.").

In its brief, (Doc. 135 at 9-10), the government states:

Saxon submitted two requests to the warden of FCI Danbury for compassionate release and home confinement, on April 26, 2020 and April 28, 2020. See [Doc. 135-1]. Saxon did not premise those requests on any personal reasons, health or otherwise, but rather on the generalized fear of contracting COVID-19 while incarcerated. Id. The warden denied the requests on June 8, 2020, noting that she did not "present extraordinary or compelling reasons" to justify relief under 18 U.S.C. §3582, and was not eligible for home confinement release under the CARES Act. *See* [Doc. 135-2]. FCI Danbury administrative staff advised that, as of [July 9, 2020], Saxon has two pending administrative applications: one for reconsideration of her compassionate release denial, and the other for a sentencing reduction pursuant to the RDAP program.

The government then contends that the court should deny Saxon's motion on its merits with prejudice, despite her pending administrative requests, since she has not met her burden of establishing that a sentence

reduction is warranted under 18 U.S.C. §3582(c)(1)(A) and based on the §3553(a) factors. It also states that to the extent that Saxon's motion may be interpreted as a request for home confinement, this court lacks authority with respect to such a request.

In its brief, the government states the incorrect date that Warden Easter denied Saxon's requests for compassionate release as "June 8, 2020", (Doc. 135 at 9), despite its own Exhibit, (Doc. 135-2), which shows that the Warden's response was on May 6, 2020. The differences in the dates in this case is significant since if the correct date was June 8, 2020, then the Warden's response would not have been timely and Saxon's motion would be properly before the court. However, since the Warden responded to Saxon's requests on May 6, 2020, the response was timely and Saxon was required to exhaust all of the BOP administrative remedies before filing her motion with the court. As such, the government is reminded of the need to be careful when filing its briefs and to check the relevant dates particularly since they are very significant in compassionate release cases.

Nonetheless, the court is well-aware of the Department of Justice's position that simply because 30 days have elapsed between Saxon's request for release to the warden of FCI Danbury, and the filing of her instant motion, Saxon's motion is now properly before the court.[6]

---

[6]The court notes that the government has also taken the contrary position, before this court, as well as in other district courts, that a defendant fails to demonstrate that he exhausted his administrative remedies if he does

As mentioned, the Exhibits show that Saxon submitted Requests for Compassionate Release to the Warden "due to extraordinary and compelling circumstances" based on COVID-19, and that the Warden timely denied them. (Docs. 135-1 & 135-2). In the May 6, 2020 response, Warden Easter specifically advised Saxon of the administrative remedies available with the BOP to appeal the decision. In fact, Saxon did proceed with her administrative remedies to appeal the Warden's denial of her request for compassionate release, but she has not yet completed the BOP administrative remedy process. Rather, Saxon filed her instant motion on June 17, 2020 with this court requesting compassionate release under 18 U.S.C. §3582(c)(1)(A).[7] Further, Saxon concedes in her reply brief that she did not base her April 2020 requests to the Warden on her underlying medical conditions along with the COVID-19 pandemic, which, allegedly, she

---

not appeal the warden's timely denial of his request for compassionate release to the BOP Regional Director's Office and Office of General Counsel, pursuant to 28 C.F.R. §§542.15 and 571.63, and that such motions should be denied as premature. *See e.g.,* United States v. Gadsden, 2020 WL 3871083, *1.

[7]Since the government included in its response the safety measures implemented by the BOP in response to the COVID-19 virus, as well as the safety protocols enacted at FCI Danbury, (Doc. 135 at 2-8), and since this court is well-aware of all of the safety measures implemented by the BOP, *see* Cordaro, 2020 WL 2084960, and since many of the measures are found on the BOP's websites, they are not repeated. *See also* BOP website: www.bop.gov/coronavirus/index.jsp. The court is also aware of the particular problems encountered at FCI Danbury and the BOP's response to them as discussed in the pending class action. *See* Martinez-Brooks v. Easter, —— F. Supp. 3d ——, 2020 WL 2405350.

only recently discovered may make her more likely to suffer serious complications if she contracts COVID-19. (Doc. 139 at 3; Doc. 135-1).

As mentioned, Saxon and the government assert that this court has jurisdiction since defendant filed her instant motion over 30 days after she submitted her requests to the Warden despite the fact that her appeal, through the BOP administrative remedy process, of the Warden's May 6, 2020 response is pending. Since the Warden timely responded to Saxon's request and advised Saxon that she could appeal the response *via* the BOP administrative remedy process, and since Saxon then filed an appeal which is still pending, this court finds that Saxon has not exhausted all of her administrative remedies as required, and that the court cannot waive the exhaustion requirement. *See* United States v. Greenlove, 2020 WL 3547069 (M.D. Pa. June 30, 2020); United States v. Fraction, 2020 WL 3432670 (M.D. Pa. June 23, 2020); United States v. Muskey, 2020 WL 3547084 (M.D. Pa. June 30, 2020); United States v. Gadsden, 2020 WL 3871083.

The court finds that Saxon's motion should be dismissed for lack of jurisdiction because she has not exhausted all of her administrative remedies. This court has consistently found that the exhaustion requirement is "mandatory" and that since Saxon filed her instant motion with the court before exhausting her administrative remedies with the BOP, this court is "without jurisdiction to entertain the motion." *See* Greenlove, *supra*; Fraction, *supra* (citing Untied States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020)). *See also* United States v. Bolze, ---F.Supp.3d---, 2020 WL 2521273, \*3

12

(E.D.Tenn. May 13, 2020) (Court held that it could not waive §3582(c)(1)(A)'s exhaustion requirement, since it is "a jurisdictional threshold to consideration of defendant's motion", stating that "[w]hen a statutory bar to suit is jurisdictional, 'a litigant's failure to comply with the bar deprives a court of all authority to hear a case.'") (quoting United States v. Wong, 575 U.S. 402, 409, 135 S.Ct. 1625 (2015)).

This court has also held that it is bound to follow the Third Circuit's Raia case. *See also* United States v. Blevins, 2020 WL 3260098, *2 (S.D.Miss. June 16, 2020) ("The statute [18 U.S.C. §3582(c)(1)(A)] does not provide an exception to this mandatory statutory exhaustion requirement, equitable or otherwise.") (citing United States v. Koons, 2020 WL 1940570, at *3 (W.D.La. Apr. 21, 2020) ("If an inmate's request is denied before the lapse of 30 days, then he must fully exhaust administrative remedies before the Court may consider his motion to modify his sentence under the statute."); United States v. Martin, 2020 WL 3065302, at *3 (S.D.Miss. June 9, 2020)) (district court criminal nos. omitted). *See also* United States v. Smith, --- F.Supp.3d---, 2020 WL 2487277, *7 (E.D.Ar. May 14, 2020) ("the interpretation of §3582(c)(1)(A) is a jurisdictional issue" and, the court agrees with the courts that have found "a defendant may go 'directly to court if a warden is not responsive to a request but, if a warden *does* act within 30 days, the defendant would be required to pursue an administrative appeal'

13

before going to court.") (emphasis original). [8] *See also* <u>United States v. Gadsden</u>, 2020 WL 3871083, *2 ("if the warden does not respond to the inmate's request, the inmate may file a motion with the court after 30 days have lapsed", and "if the warden does respond by denying the inmate's request, the inmate is obligated to fully exhaust all the administrative procedures before filing a motion with the court.") (citation omitted).

The Warden responded to Saxon's requests in a timely manner within the 30-day period, and then advised defendant that she could appeal the May 6, 2020 response through the BOP administrative remedy process. Saxon then appealed the Warden's response. Nonetheless, Saxon also waited 30 days after the Warden received her request and then filed her instant motion with this court alleging that it is now properly before the court.

Regarding exhaustion in this case, the court must first consider whether Saxon has exhausted her BOP administrative remedies despite the

---

[8]This court concurs with the in-depth analysis of the court in <u>United States v. Smith</u>, ---F.Supp.3d---, 2020 WL 2487277, *7-9, and its conclusion that: "a defendant may only file a motion for compassionate release if he has fully exhausted his administrative remedies, or if the warden fails to act on his request within 30 days of receipt. Because the warden here responded to [defendant's] request in less than 30 days, [defendant] was required to fully exhaust his administrative remedies prior to filing this Motion." The court also held that in such circumstances, the court does not have jurisdiction over defendant's motion. *Id.* (citing, in part, <u>United States v. Nance</u>, 2020 WL 114195, at *2 (W.D.Va. Jan. 10, 2020) ("reasoning that reading lapse as nothing more than the passage of time 'would ignore the extreme unlikelihood of any administrative appeal within the bureaucracy of the Bureau of Prisons being completed in 30 days.'").

government's misplaced concession on this issue. *See* Blevins, 2020 WL 3260098, *2 (Court first considered the exhaustion issue even though "the Government seem[ed] to concede that there has been exhaustion", and the court then found that "the Defendant failed to exhaust his administrative remedies" and dismissed his motion.). *See also* United States v. Bolze, --- F.Supp.3d---, 2020 WL 2521273, *3 (E.D.Tn. May 13, 2020) (court held that "the exhaustion requirement is a prerequisite to the court's exercise of its authority under §3582(c)(1)(A)", and "the Court lacks jurisdiction to reduce a term of imprisonment under §3582(c)(1)(A) if defendant has not exhausted his administrative remedies ….").

Saxon has not completed the BOP's administrative remedy process with respect to her appeal of the response from the Warden, and since the Warden timely responded to Saxon's request, Saxon cannot directly file her motion with the court, as she contends she can, without exhausting all of her administrative remedies. *See* Blevins, 2020 WL 3260098, *3 ("If an inmate's request is denied before the lapse of 30 days, then he must fully exhaust administrative remedies before the Court may consider his motion to modify his sentence under the statute.") (citation omitted). "Therefore, a defendant does not satisfy the exhaustion requirement of §3582(c)(1)(A) if he does not appeal the warden's decision to deny compassionate release." *Id.* (citing United States v. Pinson, 2020 WL 2771343, at *3 (S.D.Tex. May 28, 2020) ("finding defendant's failure to appeal the warden's denial of compassionate release meant that he failed to exhaust his administrative rights"). If the

15

Warden fails to respond to the inmate's request within 30 days, then he can file his motion for compassionate release with the court without fully exhausting his BOP administrative remedies. *See* <u>United States v. Smith</u>, ---F.Supp.3d---, 2020 WL 2487277, *9.

As the court in <u>United States v. Smith</u>, 2020 WL 2063417, *2 (N.D.Oh. April 29, 2020), explained:

> Smith has also failed to fully exhaust his administrative remedies with respect to his original motion. Because the Warden explicitly denied his 2019 request for compassionate release, Smith needed to exhaust by appealing the Warden's decision. *See* 28 C.F.R. §542.15(a); *see also* B.O.P. Program Statement 5050.50 §571.63 (citing the Administrative Remedy Program appellate procedure as the proper method of administratively appealing a denied §3582(c)(1)(A)); *see, e.g.*, <u>United States v. Brummett</u>, 2020 WL 1492763, at *1-2 (E.D.Ky. Mar. 27, 2020)(denying request for compassionate release due to COVID-19 for failure to exhaust because inmate did not appeal warden's denial of his request for a reduction in sentence).

Recently, in <u>United States v. Early</u>, 2020 WL 2572276, *3 (W.D.Pa. May 21, 2020), the court considered a similar exhaustion issue as presented in the instant case, and stated: "Warden Williams responded to Defendant's request [for compassionate Release/Reduction in Sentence] within 30 days of receipt. Consequently, Defendant is obligated to complete the administrative appeal process. Therefore, this Court finds that Defendant has failed to exhaust his administrative remedies." The court in <u>Early</u>, *id.*, also stated that the court may not waive the exhaustion requirement and that "exhaustion of [defendant's] administrative remedies is mandatory." (citing <u>United States v. Raia</u>, 954 F.3d 594 (3d Cir. 2020)). "In <u>Raia</u>, the Court of

16

Appeals emphasized the BOP's statutory role and extensive efforts to control the spread of Covid-19, and held that the 'exhaustion requirement takes on added – and critical – importance.'" *Id.* (quoting <u>Raia</u>, 954 F.3d at 597). "The BOP is in the best position to consider the myriad of factors necessary in rendering a decision." *Id.*

Saxon, like the defendant in the <u>Early</u> case, *id.* at *2, as well as the defendant in the <u>Greenlove</u> case, contends that the exhaustion requirement is satisfied because she filed her requests over 30 days before she filed her instant motion, despite the fact that the Warden responded to her requests within the 30-day time frame provided for in the First Step Act.

The court in <u>Early</u>, *id.* at *3, explained:

> Defendant's reading of the statute is misplaced. Courts have interpreted the statue to mean that an inmate must fully exhaust his administrative remedies unless his or her warden does not respond to the inmate's request within 30 days. *See* <u>United States v. Nance</u>, 2020 WL 114195, at *2 (W.D. Va. Jan. 10, 2020). In other words, a defendant must wait to file a motion with this Court until either his administrative request related to compassionate release is denied and he fully exhausts all administrative rights to appeal or thirty days have passed from the date he made the application *with no response from the warden*, whichever occurs first. *Id.* ("[C]ases indicate that this statutory exhaustion requirement has been interpreted to excuse full exhaustion of administrative remedies only if 30 days have elapsed without any response by the Bureau of Prisons to the inmate's request."), citing, <u>United States v. Bolino</u>, 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020). *See also*, <u>United States v. Bevans-Silva</u>, 2020 WL 2475079 (S.D. Ga. May 13, 2020); <u>United States v. Samuels</u>, 2020 WL 2499545, at *2 (W.D. La. May 13, 2020); <u>United States v. McCallister</u>, 2020 WL 1940741, at *2 (W.D. La. April 21, 2020); <u>United States v. Rodriguez</u>, —— F.Supp.3d ——, ——, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1,

2020) ("Under the First Step Act ... it is possible for inmates to file compassionate-release motions—under the 30-day lapse provision—when their warden never responds to their request for relief."); <u>United States v. Mattingley</u>, 2020 WL 974874, at *3 (W.D. Va. Feb. 28, 2020); <u>United States v. Keith</u>, 2019 WL 6617403, at *1 (W.D. Okla. Dec. 5, 2019)(To exhaust administrative remedies, a defendant "first submits his request to BOP and either (1) complete the administrative appeal process, if BOP denies his request; or (2) wait 30 days from BOP's receipt of his request to deem its lack of response a denial of his request."). [District Court criminal nos. omitted].

In <u>United States v. Solomon</u>, 2020 WL 2768897, *3 (W.D.Pa. May 28, 2020), the court stated, "[c]ourts have interpreted [18 U.S.C. §3582(c)(1)(A)] to mean that an inmate must fully exhaust his administrative remedies unless his or her warden does not respond to the inmate's request within 30 days." (citing <u>Early</u>, 2020 WL 2572276, at *3). This court agrees with <u>Early</u>, <u>Solomon</u>, <u>United States v. Smith</u>, ---F.Supp.3d---, 2020 WL 2487277, and <u>Blevins</u>, as well as the cases to which they cite, and finds that Saxon must wait to file a motion with the court after she fully exhausts all administrative rights with respect to the Warden's response to her administrative request for compassionate release since the Warden responded to her request within 30 days from the date she submitted it. *See id.* (citing <u>Early</u>, 2020 WL 2572276, at *3). *See also* <u>United States v. Martin</u>, 2020 WL 3065302, *3 (S.D.Miss. June 9, 2020) (Court "agree[d] with those courts interpreting the 'lapse' provision [i.e., the language in 18 U.S.C. §3582(c)(1)(A) providing that the court can consider a motion for compassionate release after the "lapse of 30 days from the receipt of such a request by the warden"] as having a

futility component: it applies only when the BOP has failed to respond to a compassionate-release request within 30 days of its submission. If an inmate's request is denied before the lapse of 30 days, then he must fully exhaust administrative remedies before the Court may consider his motion to modify his sentence under the statute.") (citing Early, 2020 WL 2572276, at *3; Blevins, 2020 WL 3260098, *3 ("Inasmuch as [defendant's] request was denied [by the warden] before the lapse of 30 days, he is required to fully exhaust his administrative remedies before the Court may hear his Motion."); United States v. Ng Lap Seng, ---F.Supp.3d---, 2020 WL 2301202, *5-6 (S.D.N.Y. May 8, 2020)).

In Ng Lap Seng, 2020 WL 2301202, *5-6, the Court held that section 3582(c)'s "exhaustion requirement is clearly statutory and therefore mandatory" and, did not agree with courts that have "interpreted 'lapse of 30 days from the receipt of such a request by the warden,' 18 U.S.C. §3582(c)(1)(A), to mean that the statute's exhaustion requirement is satisfied merely upon the passage of 30 days from the date the warden receives a defendant's request that the BOP file a compassionate release motion on its behalf, regardless of whether the BOP has failed to take action on the request." The court stated that this "first reading would also—in many cases—render the statute's provision regarding full exhaustion of administrative remedies meaningless, as defendants like Ng would forego appealing a warden's denial of their compassionate release request if the 30-day period was nearing an end." Id. The court in Ng Lap Seng then

19

"agree[d] with the courts that have interpreted Section 3582(c)(1)(A)'s 'lapse' language as requiring the BOP's failure to respond to a prisoner's request for a compassionate release motion within thirty days, giving the court discretion to hear a compassionate release motion if the BOP has failed to timely consider the request." *Id.* at *6. The court also explained that "given the BOP's regulations regarding its deadlines for considering compassionate release requests, it is unlikely in the normal case that a defendant could exhaust his administrative remedies within 30 days", and that "[i]f Congress desired to so fundamentally change the compassionate release process by circumventing the BOP's full administrative review, Congress could have used clearer language, as it did elsewhere in the First Step Act." *Id.* The court then concluded that "[b]ecause I read Section 3582(c)(1)(A)'s 'lapse of 30 days' language to require the BOP's failure to respond to a compassionate release request within thirty days of its submission to the BOP, I conclude that Ng must fully exhaust the BOP appeals process to satisfy Section 3582(c)(1)(A)'s exhaustion requirement", and that the defendant "has not yet satisfied this exhaustion requirement due to his failure to fully appeal the warden's denial of his request." *Id.* at *7. The court in <u>Ng Lap Seng</u> also indicated that if Section 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, then the government can waive the affirmative defense of exhaustion. Conversely, if Section 3582(c)(1)(A)'s exhaustion requirement is jurisdictional, as this court has found it is based on <u>Raia</u>, then the government cannot waive the exhaustion issue and the court must be

20

satisfied that it has jurisdiction to consider the merits of a defendant's motion for compassionate release. As indicated, this court has found that exhaustion of administrative remedies is mandatory under 18 U.S.C. §3582(c)(1), *see* Blevins, 2020 WL 3260098, *2, Greenlove, *supra*, and since Saxon has not completely exhausted her remedies with respect to the Warden's response to her request, this court does not have jurisdiction to grant her request for compassionate release.

In short, simply because Saxon submitted her compassionate release request more than 30 days before she filed her instant motion, does not establish that the 30-day requirement for exhaustion of administrative remedies has been met. *See* United States v. Smith, ---F.Supp.3d---, 2020 WL 2487277, *7-9.

Also, to the extent that Saxon is liberally construed as attempting to argue futility based on her above stated allegations in her motion, and requests the court to consider the substantive merits of her motion, this court has agreed with the courts that have found that there is no futility exception in 18 U.S.C. §3582(c)(1)(A). *See* Greenlove, *supra*; Blevins, 2020 WL 3260098, *2 ("The statute does not provide an exception to this mandatory statutory exhaustion requirement, equitable or otherwise."). Further, Saxon's use of the administrative process by submitting requests with the Warden before she filed his instant motion belies any claimed futility since the Warden timely responded to her requests and even advised defendant how

to appeal the May 6, 2020 response through the BOP administrative remedy process.

Additionally, this court has now repeatedly held that it cannot waive Section 3582(c)(1)(A)'s exhaustion requirement because it is jurisdictional. *See* United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (Third Circuit held that courts cannot consider a request for compassionate release under the First Step Act until the inmate has exhausted his BOP administrative remedies.); United States v. Davila, 2020 WL 2839860, *2 (W.D.Pa. June 1, 2020) ("The exhaustion requirement that applies in this case is explicitly set forth in §3582(c)(1)(A), and, therefore, cannot be excused."); United States v. Pitt, 2020 WL 2098272, *2 (M.D.Pa. May 1, 2020) ("The court cannot overlook [defendant's] failure to exhaust his remedies, as the Third Circuit recently emphasized the need for 'strict adherence' to the exhaustion requirement in the wake of the COVID-19 pandemic.") (citing Raia, 954 F.3d at 597).

Further, even though Saxon and, inexplicably, the government concur that since she submitted his request for compassionate release to the Warden and 30 days passed before she filed his instant motion, the court finds that Section 3582(c)(1)(A)'s "lapse of 30 days" language has not been satisfied, permitting judicial consideration of his motion. This court rejects the interpretation of the language "lapse of 30 days from the receipt of such a request by the warden, 18 U.S.C. §3582(c)(1)(A), to mean that the statute's exhaustion requirement is satisfied merely upon the passage of 30 days from

22

the date the warden receives a defendant's request that the BOP file a compassionate release motion on its behalf, regardless of whether the BOP has failed to take action on the request." Ng Lap Seng at *5.

Secondly, the court cannot yet determine if Saxon has demonstrated that "extraordinary and compelling reasons" due to the COVID-19 pandemic and her medical conditions warrant a reduction of her sentence, since she has not exhausted her administrative remedies. *See* United States v. Zukerman, ---F.Supp.3d---, 2020 WL 1659880, *2 (S.D.N.Y. April 3, 2020) ("in order to be entitled to relief under 18 U.S.C. §3582(c)(1)(A)(i), [defendant] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of [her] sentence.") (emphasis added); Raia, 954 F.3d at 597 ("The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant exhausts administrative remedies with the BOP.) (citing 18 U.S.C §3582(c)(1)(A)(i)). The Third Circuit in Raia, *id.*, also held that defendant's failure to comply with §3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point."

Finally, to the extent Saxon is deemed as also relying on the CARES Act, which was signed into law on March 27, 2020, as well as Barr's March 26, 2020 and April 3, 2020 Memoranda to the BOP, such reliance is misplaced.

23

This court has repeatedly held that, "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." United States v. Cruz, ---F.Supp.3d---, 2020 WL 1904476, *4 (M.D.Pa. April 17, 2020); Cordaro, 2020 WL 2084960, *6-7 ("the determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director." (citations omitted). *See also* United States v. Sawicz, 2020 WL 1815851, *1 (E.D.N.Y. April 10, 2020); United States v. Doshi, 2020 WL 1527186, *1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement' under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."); United States v. Coker, 2020 WL 1877800, *1 (E.D.Tenn. April 15, 2020) (court stated that while section 12003 of the [CARES Act] "presently and temporarily provides for expanded prisoner home confinement", "[t]he CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons.") (citations omitted); United States v. Berry, 2020 WL 1984117, *3 (M.D.Pa. April 27, 2020) (same); United States v. Williams, 2020 WL 2748287, *1 (E.D.Tenn. May 27, 2020) ("The CARES Act gives decision-making authority to of the Attorney General and the Director of the [BOP]", and "Courts therefore do not have power to grant relief under Section 12003 of the CARES Act.") (citations omitted).

## III.    CONCLUSION

Based on the foregoing, Saxon's Emergency Motion for Compassionate Release and request for the court to release her from prison to home confinement due to the COVID-19 pandemic, **(Doc. 130)**, will be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction due to her failure to exhaust all of her BOP administrative remedies under §3582(c)(1)(A)(i).

Further, insofar as Saxon is challenging any decision by the BOP that she is not eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. An appropriate order will follow.

s/*Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 6, 2020**

17-128-01

25